UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JACQUELINE D. MILLER,            )
                                 )   No. CV-08-191-CI
          Plaintiff,             )
                                 )
v.                               )   ORDER GRANTING DEFENDANT'S
                                 )   MOTION FOR SUMMARY JUDGMENT
MICHAEL J. ASTRUE,               )   AND DENYING PLAINTIFF'S
Commissioner of Social           )   MOTION FOR SUMMARY JUDGMENT
Security,                        )
                                 )
          Defendant.             )
                                 )
_____)

     BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec.
13, 15.)  Attorney Maureen J. Rosette represents Plaintiff; Special
Assistant United States Attorney David R. Johnson represents
Defendant.  The parties have consented to proceed before a magistrate
judge.  (Ct. Rec. 8.)  After reviewing the administrative record and
briefs filed by the parties, the court **DENIES** Plaintiff's Motion for
Summary Judgment and **GRANTS** Defendant's Motion for Summary Judgment.

                            **JURISDICTION**

     Plaintiff Jacqueline D. Miller (Plaintiff) filed for social
security income (SSI) on June 19, 2006. (Tr. 9.)  Plaintiff alleged an
onset date of November 11, 1996.  (Tr. 156.)  Benefits were denied
initially and on reconsideration.   (Tr. 118, 124.)   Plaintiff
requested a hearing before an administrative law judge (ALJ), which
was held before ALJ Paul Gaughen on September 6, 2007.  (Tr. 49-84.)
Plaintiff was represented by counsel and testified at the hearing.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -1

(Tr. 55-74.)  Vocational expert Daniel McKinney and Plaintiff's husband Timothy Miller also testified.  (Tr. 74-82.)  The ALJ denied benefits (Tr. 9-19) and the Appeals Council denied review.  (Tr. 2.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing transcripts and will, therefore, only be summarized here.

At the time of the hearing, Plaintiff was 41 years old.  (Tr. 55.)  She graduated from high school and attended college for a year and half.  (Tr. 56.)  She also has some training as a dental assistant, but did not obtain a certificate.  (Tr. 75.)  Plaintiff received SSI benefits from 1999 to 2001.  She testified benefits were terminated because her spouse made too much money.  (Tr. 57.) Plaintiff previously worked as a bus aide, cook helper, sandwich maker, and grocery bagger.  (Tr. 74-75.)  She was last employed as a caregiver in 2003, but testified she stopped working after four months because the work was too hard on her hands and knees.  (Tr. 58.)

Plaintiff testified she has the following medical problems: memory problems (Tr. 61), migraines (Tr. 61), fibromyalgia (Tr. 62), asthma (Tr. 63), chest pain (Tr. 64), acid reflux (Tr. 64), irritable bowel syndrome (Tr. 65), and carpal tunnel syndrome. (Tr. 66.) She testified her migraines last all day and no medication helps.  (Tr. 62.)  She alleges she has pain throughout her entire body due to fibromyalgia, including pain and soreness in her neck, shoulders, back, hips, and knees.  (Tr. 62-63.)  Plaintiff testified her chest pain occurs four or five times per week and lasts anywhere between five minutes to all day.  (Tr. 64.)  She testified irritable bowel

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -2

syndrome causes her to have diarrhea on average three days per week for five to ten minutes every hour. (Tr. 65-66.) Plaintiff said she was diagnosed with carpal tunnel while in prison in 2005. (Tr. 66.) She testified she can write for five or ten minutes, then has to stop because her hand and arm start throbbing. (Tr. 66.) Based on all of her medical problems combined, Plaintiff testified she can sit in a chair for five or ten minutes, stand for five minutes, walk about a half a block, cannot bend over, lift no more than five to seven pounds and is very, very slow at climbing stairs. (Tr. 66-68.)

Plaintiff also testified she suffers from depression and anxiety. (Tr. 68.) She has anxiety attacks lasting a couple of hours two times per week on average. (Tr. 69.) She alleged the anxiety attacks cause her to have chest pains to the point she cannot breath. (Tr. 69.)

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan,* 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -3

as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze,* 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Services,* 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -4

last for a continuous period of not less than twelve months." 42
U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that
a Plaintiff shall be determined to be under a disability only if his
impairments are of such severity that Plaintiff is not only unable to
do his previous work but cannot, considering Plaintiff's age,
education and work experiences, engage in any other substantial
gainful work which exists in the national economy. 42 U.S.C. §§
423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability
consists of both medical and vocational components. *Edlund v.
Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential
evaluation process for determining whether a claimant is disabled. 20
C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is
engaged in substantial gainful activities. If the claimant is engaged
in substantial gainful activities, benefits are denied. 20 C.F.R. §§
404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities,
the decision maker proceeds to step two and determines whether the
claimant has a medically severe impairment or combination of
impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If
the claimant does not have a severe impairment or combination of
impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third
step, which compares the claimant's impairment with a number of listed
impairments acknowledged by the Commissioner to be so severe as to
preclude substantial gainful activity. 20 C.F.R. §§
404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404, Subpt. P, App.
1. If the impairment meets or equals one of the listed impairments,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -5

the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

At step one of the sequential evaluation process, the ALJ found

Plaintiff has not engaged in substantial gainful activity at any time since June 19, 2006, the date of application for SSI.[1]  (Tr. 11.)  At step two, he found Plaintiff has the following severe impairments: obesity; history of valvular heart disease not otherwise specified; chronic pain syndrome, diffuse, not otherwise specified, without capacity of documentation with laboratory or other findings; adjustment disorder with mixed anxiety and depressed mood, mild; and personality disorder, not otherwise specified, with dependent, avoidant, and antisocial features.  (Tr. 11.)  The ALJ found Plaintiff's other alleged impairments are not severe: migraine headaches, carpal tunnel syndrome, irritable bowel syndrome, reflux and asthma.  (Tr. 11.)  At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 11.)  The ALJ then determined:

> [C]laimant has the residual functional capacity to perform light work.  The claimant can lift 20 pounds occasionally and frequently lift or carry 10 pounds.  The claimant can sit for six hours and stand or walk for six hours in an eight-hour workday.  The claimant's ability to push or pull is unlimited other than by lifting or carrying restrictions. She can occasionally balance, stoop, kneel, crouch, crawl, and climb.  The claimant has no limitations in fingering, handling, or feeling.  The claimant cannot lawfully be in a work setting where children are left alone.  She can have minimal social contact with coworkers and/or the general public.  The claimant may have difficulty in responding appropriately to criticism by a supervisor regarding her work performance, but she would not leave her job due to said criticism.

(Tr. 13.)  At step four, the ALJ found Plaintiff is unable to perform

_____

[1]Although Plaintiff alleged an onset date of November 11, 1996, onset for SSI is established as of the date of filing and no retroactive benefits are available.  S.S.R. 83-20.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -7

any past relevant work. (Tr. 18.) After considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, jobs were found to exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 18.)   Thus, the ALJ concluded Plaintiff has not been under a disability as defined in the Social Security Act since June 19, 2006, the date the application was filed. (Tr. 19.)

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, Plaintiff asserts the ALJ erred by: (1) failing to include all of Plaintiff's mental limitations in the hypothetical posed to the vocational expert (Ct. Rec. 14 at 14); and (2) failing to adequately support the credibility determination. (Ct. Rec. 14 at 17.) Defendant argues the ALJ: (1) correctly judged the medical evidence in determining Plaintiff's psychological limitations and abilities (Ct. Rec. 16 at 8); and (2) correctly determined Plaintiff's credibility was undermined. (Ct. Rec. 16 at 11.)

**DISCUSSION**

**1.    Residual Functional Capacity**

Plaintiff argues the ALJ failed to acknowledge all of the limitations identified by Dr. Gentile, a state reviewing psychologist, in the Mental Residual Functional Capacity Assessment form dated August 28, 2006.[2] (Ct. Rec. 14 at 14.) Dr. Gentile identified one

---

[2]Plaintiff argues, "The ALJ did not include all of Dr. Gentile's limitations in his hypothetical question to the vocational expert." (Ct. Rec. 14 at 14.) Plaintiff's argument necessarily includes the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -8

marked limitation in the ability to interact and relate appropriately with the general public and moderate limitations in five other areas: (1) the ability to work in coordination with or proximity to others without being distracted by them; (2) the ability to accept instructions and respond appropriately to criticism from supervisors; (3) the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (4) the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and (5) the ability to respond appropriately to changes in the work setting. (Tr. 222-24.)

With respect to the moderate limitation in the ability to work in coordination with or proximity to others without being distracted by them, Dr. Gentile explained:

> [Claimant] w/intact cognitive functioning in mental status eval is capable of at least simple and likely more complex instructions. May be distracted by others due to anxiety sxs [symptoms] and antisocial personality traits.

(Tr. 222, 224.) Dr. Gentile explained the marked limitation in the ability to interact appropriately with the general public and the three moderate limitations in the area of social interaction as follows:

> [Claimant] would do best away from public and limited coworker interaction. Supervision should be clear and directive to avoid power struggles. May need some initial hygiene standards set.

(Tr. 223-24.) Dr. Gentile's assessment of a moderate limitation in the ability to respond appropriately to changes in the work setting

---

argument that the ALJ's residual functional capacity determination does not include all of the limitations assessed by Dr. Gentile, so the court addresses both arguments accordingly.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -9

1  was explained as follows:

2      More time to adjust to work changes mostly due to
       personality issues and resistance to change rather than
3      cognitive issues.

4  (Tr. 223-24.)  The ALJ gave significant weight to Dr. Gentile's

5  opinion.  (Tr. 16-17.)  The ALJ also indicated the opinions of the

6  state agency medical consultants were reflected in the residual

7  functional capacity determination.  (Tr. 16.)  Plaintiff argues the

8  ALJ erred because she did not include all of Dr. Gentile's limitations

9  in the hypothetical question to the vocational expert and "did not

10 state them [Plaintiff's limitations] as they were stated by Dr.

11 Gentile."  (Ct. Rec. 14 at 14.)

12     The ALJ properly accommodated Plaintiff's tendency to be

13 distracted by others.  (Ct. Rec. 16 at 9.)  The residual functional

14 capacity determination made by the ALJ includes "minimal social

15 contact with coworkers and/or the general public."  (Tr. 13.)  The

16 restriction of "minimal contact with coworkers" both minimizes

17 Plaintiff's tendency to be distracted by others and addresses the

18 assessment that Plaintiff "would do best away from public and limited

19 coworker interaction."[3]  The ALJ need not be redundant and create two

20 restrictions where one restriction encompasses two limitations.  The

21 ALJ adequately provided for Plaintiff's tendency to be distracted by

22 others by requiring minimal social contact with coworkers and the

23 public.

24     The ALJ also properly accommodated Plaintiff's difficulties with

25

26     [3]This restriction also adequately takes into account Dr. Gentile's

27 marked limitation in the ability to interact appropriately with the

28 public.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -10

supervisors.  The residual functional capacity determination includes

"difficulty in responding appropriately to criticism by a supervisor

regarding her work performance, but she would not leave her job due to

said criticism." (Tr. 13.)  Plaintiff's argument suggests the ALJ's

hypothetical given to the vocational expert fails because it did not

include the phrase provided by Dr. Gentile, "Supervision should be

clear and directive to avoid power struggles." (Ct. Rec. 14 at 13.)

However, as pointed out by Defendant, the vocational expert noted that

"in an unskilled work environment there wouldn't be a lot of

supervision interaction generally." (Tr. 77.)  The vocational expert

went on to explain:

> Based on my understanding of the hypothetical, I think
> that the person you described would probably be able to do
> unskilled work of sedentary and light nature.  I say that
> because I think there would be minimal interaction with
> supervision.  The job would be repetitive and simple to
> learn and by it's [sic] nature being unskilled work.

(Tr. 78.)  The vocational expert pointed out that jobs Plaintiff is

capable of doing would not by nature require a lot of supervision.

The tasks would be repetitive and simple to learn, not requiring

complex instructions or constant supervision.  Thus, the limitations

resulting in the assessment that Plaintiff could do unskilled work of

a light and sedentary nature adequately address the issue of clear and

direct instructions from supervisors.  The ALJ included the additional

limitation of difficulty accepting criticism from supervisors, which

goes beyond Dr. Gentile's note about supervision.

The court also concludes that Dr. Gentile's note indicating

Plaintiff "may need some initial hygiene standards set" is not a

limitation on Plaintiff's ability to work caused by her impairments.

(Ct. Rec. 16 at 10.) "Residual functional capacity is what an

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT –11

individual can do despite his or her limitations." S.S.R. 96-8p; *see also* 20 C.F.R. § 416.945(a)(1). In assessing residual functional capacity, it is improper to find an individual has limitations or restrictions beyond those caused by his or her medical impairment. S.S.R. 96-8p. The ALJ noted that Plaintiff reported she can take care of substantially all of her personal care. (Tr. 16, 160-61.) Another examining physician, Dr. Rose, noted adequate hygiene, indicating that Plaintiff is capable of appropriate hygiene. (Tr. 217.) Thus, it does not appear her hygiene deficiencies, if any, are the result of her impairments and are therefore not supported by the record.[4] The ALJ did not err by failing to include Dr. Gentile's note regarding hygiene in assessing Plaintiff's residual functional capacity.

Lastly, the ALJ did not improperly fail to include Dr. Gentile's note that Plaintiff requires "more time to adjust to work changes" in the residual functional capacity finding. (Tr. 13; Ct. Rec. 14 at 13-14.) The residual functional capacity determination should include limitations based on the relevant evidence in the record. *See* S.S.R. 96-8p. Dr. Gentile is a reviewing physician and did not examine Plaintiff. Dr. Gentile's notes reflect she reviewed Dr. Everhart's psychological exam report. (Tr. 238.) The ALJ also assigned

---

[4]As noted by the Defendant, Dr. Gentile's comment about hygiene appears to be based on Dr. Everhart's notes that Plaintiff "presents as somewhat disheveled in appearance" and her grooming was "fair to poor with hair that appears uncombed but fairly clean." (Ct. Rec. 16 at 10-11; Tr. 211, 238.) However, Dr. Everhart did not suggest any limitation or deficiency in Plaintiff's ability to engage in proper hygiene. See also discussion of weighing of medical evidence, below.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -12

significant weight to Dr. Everhart's report and noted the comments in Dr. Gentile's report are consistent with Dr. Everhart's report. (Tr. 17.) However, Dr. Everhart's report specifically provides, "She would be able to respond to changes in the workplace in an appropriate fashion." (Tr. 213.) This conflicts with the finding by Dr. Gentile that Plaintiff needs more time to adjust to work changes. Thus, the statement by the ALJ that the two psychological reports are consistent is erroneous.

However, the error is harmless because the ALJ's conclusion is supported by the record. Errors that do not affect the ultimate result are harmless. *See Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007); *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990); *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984). Dr. Everhart is an examining physician and Dr. Gentile is a reviewing physician; therefore Dr. Everhart's report is entitled to more weight. A treating or examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004). If the treating or examining physician's opinions are not contradicted, they can be rejected only with "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject the opinion if he states "specific, legitimate reasons" that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). The opinion of a non-examining physician may be accepted as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035,

1043 (9ᵗʰ Cir. 1995); *Lester v. Chater*, 81 F.3d 821, 830-31 (9ᵗʰ Cir. 1995).

The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Lester*, 81 F.3d at 831, citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9ᵗʰ Cir. 1990). Cases have upheld the rejection of an examining or treating physician based on part on the testimony of a non-examining medical advisor; but those opinions have also included reasons to reject the opinions of examining and treating physicians that were independent of the non-examining doctor's opinion. *Lester*, 81 F.3d at 831, citing *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9ᵗʰ Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion); *Roberts v. Shalala*, 66 F.3d 179 (9ᵗʰ Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results). Thus, case law requires not only an opinion from the consulting physician but also substantial evidence (more than a mere scintilla but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at 1039. Furthermore, Administrative law judges are not bound by findings made by state agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions. SSR 96-6p.

In this case, there is no evidence outside Dr. Gentile's report supporting a finding that Plaintiff needs additional time to adjust to

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -14

workplace changes.  The only psychological evidence reviewed by Dr. Gentile was Dr. Everhart's report.  Plaintiff cites no other evidence in the record supporting the limitation that Plaintiff requires additional time to adjust to changes at work.  Thus, findings made by Dr. Gentile inconsistent with Dr. Everhart's report are not supported by the record.  Any error made by the ALJ in asserting the two reports are consistent is harmless, because the error does not change the fact that Dr. Gentile's assessment of an additional limitation is unsupported by the record.

The ALJ's residual functional capacity determination and hypothetical included all of Plaintiff's limitations documented in the record.  The residual functional capacity assessment is the ALJ's ultimate finding after considering the opinion and other evidence of record.  S.S.R. 96-5p.  The ALJ's residual functional capacity determination should be affirmed if he applied the proper legal standard and the decision is supported by substantial evidence.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).  The ALJ can call a vocational expert to testify about the jobs available to a claimant, given the claimant's residual functional capacity.  *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999).  It is proper for the ALJ to limit a hypothetical to those impairments supported by the record.  *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).

There is no requirement that the ALJ include a rote recitation of the restrictions identified by any particular source.  The ALJ's failure to quote Dr. Gentile's comments in the residual functional capacity finding or the hypothetical to the vocational expert is not error.  Instead, the ALJ properly considered the evidence of record and applied the appropriate legal standards in making the residual

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -15

1   functional capacity finding.  Likewise, the hypothetical posed to the
2   vocational expert contained all of the limitations the ALJ found
3   credible and supported by substantial evidence in the record.  *See*
4   *Bayliss,* 427 F.3d at 1217.  Thus, the ALJ did not err.

5   **2.  Credibility**

6       Plaintiff argues the ALJ failed to properly reject her symptom
7   testimony regarding her complaints of carpal tunnel syndrome.  (Ct.
8   Rec. 14 at 16-17.)   The ALJ found that Plaintiff's statements
9   concerning the intensity, persistence and limiting effects of her
10  symptoms are not entirely credible.  (Tr. 15.)  Defendant asserts the
11  ALJ provided sufficient reasons for the negative credibility finding
12  regarding all of her pain complaints, including her hand complaints.
13  (Ct. Rec. 16 at 13.)

14      In social security proceedings, the claimant must prove the
15  existence of a physical or mental impairment by providing medical
16  evidence consisting of signs, symptoms, and laboratory findings; the
17  claimant's own statement of symptoms alone will not suffice.  20
18  C.F.R. § 416.908.  The effects of all symptoms must be evaluated on
19  the basis of a medically determinable impairment which can be shown to
20  be the cause of the symptoms.  20 C.F.R. § 4416.929.

21      Once medical evidence of an underlying impairment has been shown,
22  medical findings are not required to support the alleged severity of
23  the symptoms.  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).
24  If there is evidence of a medically determinable impairment likely to
25  cause an alleged symptom, the ALJ must provide specific and cogent
26  reasons for rejecting a claimant's subjective complaints. *Id.* at 346.
27  The ALJ may not discredit pain testimony merely because a claimant's
28  reported degree of pain is unsupported by objective medical findings.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -16

*Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). The following factors may also be considered: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Morgan v. Apfel*, 169 F.3d 599, 601-02 (9th Cir. 1999).    In the absence of affirmative evidence of malingering, the ALJ's reasons must be "clear and convincing." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Morgan*, 169 F.3d at 599. The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)(citation omitted).

The ALJ identified a number of reasons Plaintiff's complaints of pain were not entirely believable.   First, the ALJ noted that Plaintiff alleged she was prescribed braces for her wrist, ankle and knee while incarcerated (Tr. 165), yet there is no evidence of such prescription.  (Tr. 15.) However, treatment notes dated December 28, 2005, reference "also needs wrist splint for L [left] wrist due to CTS [carpal tunnel syndrome]," and notes dated January 26, 2006 state,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -17

"Here to get HSR for knee brace." (Tr. 330, 341.) Thus, the ALJ erred in asserting there was no evidence that Plaintiff was prescribed braces while incarcerated. This error is harmless, however, because the ALJ provided other clear and convincing reasons justifying the negative credibility finding. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008); *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004); *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990); *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984).

The ALJ pointed out that in August 2006, Plaintiff was not using any assistive device and her gait was normal. (Tr. 15, 217.) The ALJ also noted Plaintiff has not sought treatment from any specialist for any of her physical conditions. (Tr. 15.) Medical treatment received to relieve pain or other symptoms is a relevant factor in evaluating pain testimony. 20 C.F.R. §§ 416.929(c)(3)(iv) and 416.929.(c)(3)(v). The ALJ is permitted to consider the claimant's lack of treatment in making a credibility determination. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); *see also Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). If Plaintiff has not been referred to or requested the assistance of specialists for treatment, and if treatment of her symptoms has been mild despite her allegations of substantial and disabling pain, it is reasonable to infer that her pain testimony might be overstated. Therefore, the ALJ properly considered Plaintiff's lack of assistive devices and medical treatment in assessing Plaintiff's credibility.

The ALJ noted secondary gain issues. (Tr. 16.) Plaintiff admitted she could put forth more effort to find work, but she had no desire or motivation to work. (Tr. 16, 304, 349.) The ALJ pointed

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT –18

out the results of Plaintiff's psychological tests were invalid and suggested a possible attempt to exaggerate her symptoms.[5]  (Tr. 16, 362.)  An ALJ may engage in ordinary techniques of credibility evaluation, including observation of inconsistencies in the claimant's testimony, *Burch*, 400 F.3d at 681, and may make reasonable inferences from the evidence.  *Batson v. Comm'r of Soc. Sec'y Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  It was reasonable for the ALJ to conclude from Plaintiff's own statements about her lack of desire to work that she might not be credible regarding her symptoms.  Thus, the ALJ reasonably considered Plaintiff's comments regarding her motivation to work and the results of psychological testing in considering her credibility.

The ALJ also concluded Plaintiff's description of daily activities which are not as limited as would be expected given the

_____

[5]Dr. Haroian noted invalid test results on the MMPI-2, MCMI-II and TSI indicate a tendency to overreport psychopathology in an attempt to appear more disturbed than she is or as a cry for help because she is unable to cope with current life stresses.  (Tr. 362.)  He also indicated the results of the PAI, while valid, should be interpreted with caution because the validity scale scores suggest some inconsistency in responses perhaps due to carelessness, confusion, attempts at impression management and possibly an exaggeration of complaints and problems.  (Tr. 362.)  If the ALJ erred in overstating the conclusions drawn from the test results, the error is harmless as he cited other clear and convincing reasons for the credibility finding.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT –19

complaints of disabling symptoms and limitations. (Tr. 16.) Plaintiff reported being able to take care of almost all of her personal care, grocery shopping, sharing household chores, and cooking from scratch. (Tr. 16, 160-61.) Plaintiff is able to drive, although she usually takes the bus. (Tr. 16, 70.) Plaintiff also admitted she can follow instructions. (Tr. 16, 164.) Despite Plaintiff's allegations of anxiety attacks lasting up to two hours, the ALJ pointed out Plaintiff is able to be in public setting such as grocery and clothing stores and uses public transportation without having panic attacks. (Tr. 16, 70, 162.) Additionally, Plaintiff was able to attend college classes without reports of anxiety problems. (Tr. 16, 75-76.) She discontinued college classes for reasons other than her alleged impairments. (Tr. 75.) She also worked for about four months since the alleged date of onset, although she alleged the work was too hard on her knees and hands. (Tr. 16, 58.) The ALJ concluded Plaintiff's work and schooling after the alleged date of onset have at times been substantial. (Tr. 16.) Activities inconsistent with disability complaints are a relevant factor in the credibility determination. *Burch*, 400 F.3d at 680; *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *Morgan v. Apfel*, 169 F.3d 595, 600 (9th Cir. 1999). The ALJ reasonably considered Plaintiff's reported daily living, school and work activities in making the credibility determination. The inconsistencies between Plaintiff's activities and her reports of disabling pain were reasonable evidence of her lack of credibility.

The ALJ also cited the lack of objective evidence of Plaintiff's complaints as part of the credibility analysis. (Tr. 15.) Although lack of medical evidence cannot be the sole factor in a negative

credibility finding, it is a factor properly considered by the ALJ. *Burch*, 400 F.3d at 680. The ALJ pointed out treatment notes contain mostly subjective complaints with very little objective evidence. (Tr. 15.) It was noted in July 2004 that Plaintiff has no joint swelling and in August 2006 that Plaintiff had no neurological problems. (Tr. 15, 191, 217.) October 2005 notes reflect Plaintiff had a normal knee exam by a physical therapist and an image of the knee revealed no abnormalities. (Tr. 15, 315, 386.) There is no evidence of cardiovascular instability. (Tr. 15, 192, 203, 218.) The ALJ also found there is no objective evidence of carpal tunnel syndrome diagnosis.[6] (Tr. 11.) The ALJ reasonably considered the lack of objective evidence of Plaintiff's alleged conditions when assessing her credibility.

The ALJ considered a number of proper factors in making the credibility determination, including Plaintiff's lack of assistive devices and medical treatment, statements about her lack of motivation to work, activities of daily living and other activities inconsistent with the degree of alleged pain, and the lack of objective evidence.

---

[6]Plaintiff did not challenge this finding or cite evidence to the contrary. Only after medical evidence showing signs, symptoms, and laboratory findings of a condition is produced must the ALJ provide clear and convincing evidence that a claimant's pain testimony regarding that condition is not believable. 20 C.F.R. § 416.908; *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). The ALJ did not err by not specifically addressing the complaints of carpal tunnel syndrome because Plaintiff did not provide objective evidence of the condition.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -21

These factors are properly considered by an ALJ when making a credibility finding. "Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision." *Fair*, 885 F.2d at 604. Thus, the ALJ did not err with respect to the credibility determination.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is supported by substantial evidence and is not based on error. Accordingly,

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment **(Ct. Rec. 15)** is **GRANTED.**

2. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 13)** is **DENIED.**

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant and the file shall be **CLOSED.**

DATED May 29, 2009.


                    S/ CYNTHIA IMBROGNO
            UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -22